# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **FENF, LLC,** | ) | **CASE NO. 5:08CV404** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **HEALIO HEALTH INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

The parties came before the Court on January 30, 2009, for a hearing on the proper construction to be accorded the claims in the subject patent, commonly referred to as a *Markman* hearing. *See Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996). (Minutes of Proceedings, 1/30/2009.)

Following review of the parties' briefs, argument, and the presentation of exhibits, as well as consideration of the legal issues presented by this matter, the Court reaches the conclusions reflected in this Memorandum Opinion and Order.

## I. THE '939 AND '915 PATENTS

Frederic Ferri is the inventor listed on Patent Numbers US 7,131,939 ("'939 Patent") and US 7,322,915 ("'915 Patent"; collectively, the "YogaToes Patents"). Ferri assigned his entire right, title, and interest in the YogaToes Patents to FenF, LLC ("FenF" or "Plaintiff"); accordingly, FenF is the patent holder for purposes of this litigation. (*See* Pl. Markman Br., Doc. No. 91, at 2.) The YogaToes Patents were issued for "an exercise tool specifically devised as a toe stretcher to align, separate, and stretch toes." *See* Abstract, '939 Patent; Abstract, '915 Patent. The tool consists of "a frame with a separator for separating a plurality of toes," along with "holes or indentations for placement of the toes." *Id.*

Plaintiff FenF markets and sells the YogaToes® product, a toe-stretching device meant to exercise the toes and feet which Plaintiff contends is protected under the YogaToes Patents. (Pl. Markman Br., Doc. No. 91, at 3.) Plaintiff alleges that Defendants Healio Health, Inc.; HealthyToes, LLC; Pain Management Technologies, Inc.; and Joshua Lefkovitz (collectively "Defendants") have created a competing product that infringes Plaintiff's rights under the YogaToes Patents. Plaintiff filed this lawsuit alleging patent infringement, trademark infringement, copyright infringement, unfair competition, false advertising, fraudulent misrepresentation, and false marking. (*See* Third Am. Compl., Doc. No. 188.) Plaintiff seeks both injunctive relief and monetary damages for Defendants' allegedly infringing the YogaToes Patents. (*Id.*) Defendants counterclaimed, alleging invalidity of the YogaToes Patents, trademark infringement, unfair competition, and tortious interference with business relationships. (*See* Answer to Third Am. Compl., Doc. No. 191.) The parties' arguments, relating as they do to the YogaToes Patents, require that certain terms within the patents be considered to determine whether construction is required. The parties have asked this Court to consider certain language within Claim 1 of the '939 Patent and Claim 33 of the '915 Patent.

## II. STANDARD OF DECISION

At this stage of the proceedings, the Court's task is to examine the terms of the patent claims presented by the parties, identify those that require construction, if any, and provide correct construction of those terms. Validity, infringement, and other ultimate issues are not proper subjects of this Court's present consideration.

In interpreting terms of patent claims, the Federal Circuit has stated that the actual words of the claim are the starting point. *See Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "Generally speaking, [courts] indulge in a 'heavy

presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). The ordinary and customary meaning is informed by the understanding of a person of ordinary skill in the art at issue at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Importantly, the meaning of a claim term should not be ascertained in isolation, but rather read "in the context of the entire patent, including the specification." *Id.* at 1313; *see also id.* at 1315 ("[T]he specification [. . .] is the single best guide to the meaning of a disputed term." (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (internal quotation marks omitted))). The claim language, specification, and prosecution history are known collectively as "intrinsic evidence," and the Federal Circuit emphasizes their importance in claim construction. *See id.* at 1317. Finally, for those cases where "the ordinary meaning of claim language [. . .] may be readily apparent even to lay judges, and claim construction [. . .] involves little more than the application of the widely accepted meaning of common understood words [. . . ,] general purpose dictionaries may be helpful." *Id.* at 1314.

In this case, the parties submitted briefs in advance of the hearing, as well as a joint claims construction chart, reflecting their respective constructions of Claim 1 of the '939 Patent and Claim 33 of the '915 Patent.[1] (Doc. Nos. 185, 186, 194.) The parties then presented argument and exhibits in a *Markman* hearing on January 30, 2009. (Minutes of Proceedings, 1/30/2009.) The Court's conclusions, based on these materials and the applicable law, are enumerated below.

---

[1] The Court notes that the language to be constructed in the disputed claims is identical. Indeed, Plaintiff notes in its opening *Markman* brief that "[t]he ['939 and '915] Patents are closely related—one is a divisional application of the other." (Pl. Markman Br. at 2.)

3

**III. CLAIMS CONSTRUCTION**

The YogaToes Patents relate to "an exercise tool specifically devised as a toe stretcher to align, separate, and stretch toes." Abstract, '939 Patent. Claim 1 of the '939 Patent and Claim 33 of the '915 Patent—the relevant parts of which are identically worded—claim "a toe stretcher for stretching toes" comprised of:

> [1][2] a frame with a separator for separating a plurality of toes;[3] wherein the frame comprises a top portion, a bottom portion, a front portion, and a back portion, and further includes:
> [2] a plurality of holes through the frame for insertion of a plurality of toes, wherein each hole in the plurality of holes includes an entrance into the back portion, an exit from the front portion, and surrounding walls connecting the entrance to the exit, wherein:
> [3] the surrounding walls in at least one hole in the plurality of holes is [sic] continuous and thereby sealed;
> [4] and the surrounding walls in at least one other hole in the plurality of holes is [sic] non-continuous and thereby not sealed, serving as an openable toe hole allowing for easy insertion of a toe, whereby a user may place the toe stretcher on the plurality of toes and effectively separate and stretch the toes.

Claim 1, '939 Patent; Claim 33, '915 Patent. In their *Markman* brief, Defendants assert that Clauses [1] and [2] do not need any construction. (Def. Markman Brief, Doc. No. 90, at 3.) Further, at the *Markman* hearing, Plaintiff stated a belief that the language of the Claims speaks for itself, and that Plaintiff offered claim constructions only in an abundance of caution should the Court determine that construction is necessary. The Court agrees that Clauses [1] and [2] are unambiguously worded and do not require construction. Thus, the Court need only resolve what construction, if any, should be given to Clauses [3] and [4].

**A. "the surrounding walls in at least one hole in the plurality of holes is continuous and thereby sealed"**

In interpreting Clause [3], the Court must indulge in a heavy presumption that the words of the clause are used in an ordinary and customary sense. *CCS Fitness*, 299 F.3d at 1366.

---

[2] The numbers are not actually listed in the Claims, but are provided for reference purposes.
[3] In the '915 Patent, this semicolon is replaced with a comma. *See* Claim 33, '915 Patent.

4

In common parlance, "continuous" means without any breaks or interstices. *See* American Heritage Dictionary (4th ed. 2006) ("Uninterrupted in time, sequence, substance, or extent."); Webster's Revised Unabridged Dictionary (1998) ("Without break, cessation, or interruption; without intervening space or time; [. . .] continual."). "Sealed," meanwhile, refers to being closed. *See* American Heritage Dictionary (4th ed. 2006) ("To close with or as if with a seal."). Thus, Clause [3] unambiguously calls for the surrounding walls in at least one hole to be without breaks ("continuous") and thereby closed ("sealed"). The language of Clause [3] is unambiguous and does not require construction.

Defendants contend that Clause [3] should be constructed in the following manner:

> the surrounding wall in at least one hole is continuous and sealed, [sic] the wall may have an opening that has been closed to make it continuous and sealed.

(*See* Def. Claim Construction Chart.) The Court disagrees. Defendants' construction creates a *contradictio in adjecto*. Continuous means having no breaks or interstices, but Defendants' construction would allow a wall to have a break or interstice ("an opening").

Moreover, Defendants' construction necessarily means that a hole with "continuous and thereby sealed" walls nonetheless may be openable. Clause [4], meanwhile, requires the surrounding walls of at least one toe hole to be "non-continuous and thereby not sealed, serving as an openable toe hole." (Claim 1, '939 Patent; Claim 33, '915 Patent.) Under Defendants' construction, the surrounding walls in Clause [3] and [4] can both be "openable"; therefore, a "continuous and thereby sealed" wall and a "non-continuous and thereby not sealed" wall could be identical. This creates a redundancy within the claim language. Since a court should avoid any interpretation of a claim that would render claim language mere surplusage,

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1325 (Fed. Cir. 2001), this Court rejects Defendants' proposed construction.

For the foregoing reasons, the Court finds that Clause [3] is unambiguous and does not need any construction.[4]

**B. "the surrounding walls in at least one other hole in the plurality of holes is non-continuous and thereby not sealed, serving as an openable toe hole"**

The Court assumes that the terms in Clause [4] are given their ordinary and customary meaning. *CCS Fitness*, 288 F.3d at 1366. The term "non-continuous" naturally means having a break of interstice, and "not sealed" refers to not being closed. Further, in common parlance, "openable" means capable of being opened; "openable" also necessarily entails the capability of being closed—if an object could not be closed, it would simply be "open," not "openable." Therefore, Clause [4] contemplates a toe hole whereby the walls have a break or interstice ("non-continuous"), which renders them not sealed, and therefore serves as an openable toe hole.[5] The Court finds that the language of Clause [4] is unambiguous and does not require any construction.

Defendants argue that Clause [4] should be constructed to mean the following:

---

[4] Because the Court finds that Clause [3] requires no construction, it declines to adopt Plaintiff's proposed construction.

[5] Defendants argue that adopting the plain language of Claim 1 of the '939 Patent would impermissibly render it co-extensive with Claim 2 of the '939 Patent, a dependent claim, and thus Defendants' construction is warranted. Defendants are correct that Claim 2 is a dependent claim. *See* Claim 2, '939 Patent ("A toe stretcher as set forth in Claim 1, wherein the openable toe hole is sealed through use of an enclosure."). Claim 2, however, never suggests that the openable toe hole will become "continuous" by being sealed through use of an enclosure—indeed, Claim 2 never uses the term "continuous." Defendants' interpretation would require this Court to add a crucial term to Claim 2; this alone is reason for rejecting Defendants' interpretation. Moreover, the Court finds that following the plain meaning of Claims 1 and 2 would not render Claim 1 co-extensive with Claim 2. Claim 1 unambiguously encompasses all toe stretching devices with at least one wall that has no breaks or interstices ("continuous") and at least one other wall that has a break or interstice ("non-continuous"), serving as an openable toe hole. Claim 2, meanwhile, encompasses all toe stretching devices as in Claim 1 where the openable toe hole (which is surrounded by a non-continuous wall) is sealed with an enclosure. Claim 2 is narrower than Claim 1 because it contemplates the non-continuous wall, serving as an openable toe hole, to be sealed with an enclosure, which Claim 1 allows but does not require.

>the surrounding wall in at least one other hole is non-continuous and thereby not sealed, but may be made continuous and sealed by closing an opening therein, e.g. using an 'enclosure.'

(Def. Claim Construction Chart.) The Court rejects this construction. First, closing an opening of a wall through use of an "enclosure" does not eliminate an interstice or break in the wall, and therefore cannot make the wall continuous. Defendants thus argue for a construction that is inconsistent with the plain meaning of the word "continuous."

For the foregoing reasons, the Court finds that Clause [4] is unambiguous and does not require any construction.[6]

## III. CONCLUSION

For the foregoing reasons, the Court finds that Claim 1 of the '939 Patent and Claim 33 of the '915 Patent are unambiguous and require no construction.

**IT IS SO ORDERED**.

Dated: April 1, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] Because the Court finds that Clause [4] requires no construction, it declines to adopt Plaintiff's proposed construction.

7