IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FenF, LLC, | ) | CASE NO. 5:08-CV-404 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE LIOI |
| vs. | ) | |
| | ) | |
| HEALIO HEALTH INC., *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**REPLY IN SUPPORT OF PLAINTIFF'S
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ...................................................................... vi

I.     RESPONSE TO DEFENDANTS' STATEMENT OF FACTS ..................... 1

II.    ARGUMENT ...................................................................................... 7

  A. **Patent Infringement** ................................................................... 7
     1. Defendants Have Not Presented Any Evidence that the Healthytoes Product Does Not Infringe the '915 and '929 Patents. ................................. 7

  B. **Patent Validity** ........................................................................... 8
     1. Defendants Have Not Presented a Prima Facie Case of Obviousness by Clear and Convincing Evidence. ......................... 8
     2. The Examiner Considered Prior Art Similar to the Patents Offered By Defendants to Show Obviousness. ....................................... 9
     3. FenF's Patented Inventions Are Not Obvious in Light of the Prior Art. ................ 10

  C. **Trademark Infringement** ......................................................... 12
     1. Plaintiff's Marks are Valid. ..................................................... 12
     2. Defendants' Used Plaintiff's Marks in Commerce. ................. 13
     3. Defendants' Use of FenF's Marks Create a Likelihood of Confusion. ................ 15

  D. **False Advertising** ..................................................................... 18
     1. Plaintiff has Established that Defendants' False Statements Influenced Consumer Decisions and That the Statement Harmed Plaintiff. .................. 18

  E. **False Marking** ......................................................................... 19
     1. The Evidence of Record Conclusively Demonstrates That Defendants' False Marking was Done with the Intent to Deceive the Public. .................. 19

  F. **Vicarious Liability for Copyright Infringement** ...................... 21

  G. **Willfulness** ............................................................................. 22
     1. Defendants' Were Objectively Reckless in Infringing FenF's Patents. ................ 22
     2. Defendants Cannot Assert That They Innocently Used FenF's Copyrighted Images after Defendants Became Aware That FenF No Longer Would Sell to Them. ........ 25
     3. Defendants' Willfully Infringed FenF's Trademarks with an Intent to Cause Confusion and Trade-Off on FenF's Goodwill. .................. 27

III.   CONCLUSION ................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.,*
  414 F.3d 400 (2d Cir. 2005) .................................................................................. 14

*800-JR Cigar, Inc. v. GoTo.com, Inc.,*
  437 F.Supp.2d 273 (D.N.J. 2006) ......................................................................... 14

*A & M Records, Inc. v. M. V. C. Distributing Corp.,*
  574 F.2d 312 (6th Cir. 1978) ................................................................................ 21

*ACS Hosp. Systems, Inc. v. Montefiore Hosp.,*
  732 F.2d 1572 (Fed. Cir. 1984) .............................................................................. 8

*Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.,*
  249 F.3d 564 (6th Cir. 2001) ................................................................................ 12

*Audi AG v. D'Amato,*
  469 F.3d 534 (6th Cir. 2006) ................................................................................ 15

*Bridgeport Music, Inc. v. UMG Recordings, Inc.,*
  585 F.3d 267 (6th Cir. 2009) .......................................................................... 25, 26

*Brookfield Communications, Inc. v. West Coast Entmt. Corp.,*
  174 F.3d 1036 (9th Cir. 1999) ........................................................................ 14, 27

*Buying for the Home, LLC v. Humble Abode, LLC,*
  459 F.Supp.2d 310 (D.N.J. 2006) ......................................................................... 14

*Carella v. Starlight Archery and Pro Line Co.,*
  804 F.2d 135 (Fed. Cir. 1986) ................................................................................ 8

*Clark v. Walt Disney Co.,*
  642 F.Supp.2d 775 (S.D. Ohio 2009) ................................................................... 12

*Comark Comm'n, Inc. v. Harris Corp.,*
  156 F.3d 1182 (Fed. Cir. 1998) ............................................................................ 23

*Conopco, Inc. v. May Dept. Stores Co.,*
  46 F.3d 1556 (9th Cir. 1991) .......................................................................... 17, 18

*Cuban Cigar Brands N. V. v. Upmann International, Inc.,*
  457 F. Supp. 1090 (S.D.N.Y. 1978) ..................................................................... 13

*Day v. Video Connection of Solon, Ohio*,
  602 F.Supp. 100 (N.D. Ohio 1982) .................................................................................. 17

*Donsco, Inc. v. Casper Corp.*,
  587 F.2d 602 (3rd Cir. 1978) ............................................................................................ 21

*Edina Realty, Inc. v. TheMLSonline.com*,
  Civ. No. 04-4371JRTFLN, 2006 WL 737064 (D. Minn. 2006) .......................................... 14

*Eli Lilly and Co. v. Natural Answers, Inc.*,
  233 F.3d 456 (7th Cir. 2000) ............................................................................................ 14

*Engineered Mechanical Services, Inc. v. Applied Mechanical Technology, Inc.*,
  584 F.Supp. 1149 (M.D. La. 1984) .................................................................................... 13

*Exxon Corp. v. Oxford Clothes, Inc.*,
  109 F.3d 1070 (5th Cir. 1997) .......................................................................................... 13

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*,
  670 F.2d 642 (6th Cir. 1982) ............................................................................................ 15

*Google Inc. v. American Blind & Wallpaper Factory, Inc.*,
  No. C 03-5340, 2007 WL 1159950 (N.D. Cal. April 18, 2007) .......................................... 14

*Gordon v. Nextel Communications and Mullen Advertising, Inc.*,
  345 F.3d 922 (6th Cir. 2003) ............................................................................................ 21

*Government Employees Ins. Co. v. Google, Inc.*,
  330 F.Supp.2d 700 (E.D.Va. 2004) .................................................................................... 14

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966) ................................................................................................................ 9

*In re Hayes Microcomputer Products, Inc. Patent Litigation*,
  982 F.2d 1527 (Fed. Cir. 1992) .............................................................................. 22, 23, 25

*In re Seagate Technology, LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ........................................................................................ 22

*Internat'l Profit Associates, Inc. v. Paisola*,
  461 F.Supp.2d 672 (N.D.Ill. 2006) .................................................................................... 14

*J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*,
  No. 06-0597, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007) ...................................................... 14

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
    299 F.3d 1242 (11th Cir. 2002) ........................................................ 18

*Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*,
    761 F.2d 649 (Fed. Cir. 1985 ........................................................ 23

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
    449 F.3d 1209 (Fed. Cir. 2006) ........................................................ 22

*Luckett v. Conlan*,
    561 F.Supp.2d 970 (N.D. Ill. 2008) ........................................................ 12

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*,
    721 F.2d 1563 (Fed. Cir. 1983) ........................................................ 7

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
    425 F.Supp.2d 402 (S.D.N.Y. 2006 ........................................................ 14

*Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*
    976 F.2d 1559 (Fed. Cir. 1992) ........................................................ 22, 23, 24

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
    806 F.2d 1565 (Fed. Cir. 1986) ........................................................ 8

*Pandrol, USA v. Airboss Railway Prods., Inc.*,
    320 F.3d 1354 (Fed. Cir. 2003) ........................................................ 7

*Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*,
    486 F.Supp. 414 (S.D.N.Y.1980) ........................................................ 13

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ........................................................ 14

*Rescuecom Corp. v. Google, Inc.*,
    526 F.3d 123 (2d Cir. 2009), ........................................................ 14

*S&L Vitamins, Inc. v. Australian Gold, Inc.*,
    521 F.Supp.2d 188 (E.D.N.Y. 2007) ........................................................ 14

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997) ........................................................ 25

*Sygma Photo News, Inc. v. High Society Magazine, Inc.*,
    778 F.2d 89 (2nd Cir. 1985) ........................................................ 21

*Takeda Chemical Industries, Ltd. v.  Aplhapharm Pty., Ltd.*,
 492 F.3d 1350  (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 1739 (U.S. 2008) ............................ 8

*Taubman Co. v. WebFeats*,
 319 F.3d 770 (6th Cir. 2003) ............................................................................... 15

*Tdata, Inc. v. Aircraft Technical Publishers*,
 411 F.Supp.2d 901 (S.D. Ohio 2006) ................................................................... 14

*U.S. Structures, Inc. v. J.P. Structures, Inc.*,
 130 F.3d 1185 (6th Cir. 1997) ............................................................................. 16

*Underwater Devices, Inc. v. Morrison-Knudsen Co.*,
 717 F.2d 1380 (Fed. Cir. 1983) ..................................................................... 23, 24

*W.L. Gore & Assoc. v. Garlock, Inc.*,
 721 F.2d 1540 (Fed. Cir. 1983) ........................................................................... 10

*Wynn Oil, Co. v. Thomas*,
 839 F.2d 1183 (6th Cir. 1988) ............................................................................. 15

*Zoomba Enters., Inc. v. Panorama Records, Inc.*,
 491 F.3d 574 (6th Cir. 2007) ............................................................................... 26

**Statutes**

15 U.S.C. § 103 .................................................................................................... 24

15 U.S.C. § 1057 .................................................................................................. 12

15 U.S.C. § 1114 .................................................................................................. 15

15 U.S.C. § 1115 .................................................................................................. 12

35 U.S.C. § 282 ................................................................................................. 8, 9

35 U.S.C. §271 ..................................................................................................... 25

**Rules**

Fed.Rules Civ.Proc. 8 ........................................................................................... 12

## SUMMARY OF THE ARGUMENT

On October 21, 2009, Plaintiff FenF, LLC ("FenF") filed its Second Motion for Partial Summary Judgment on its claims for patent infringement, federal trademark infringement, unfair competition, false advertising, false marking, Ohio unfair competition, and willful trademark, copyright, and patent infringement.    Additionally, FenF sought summary judgment that Defendant Joshua Lefkovitz was personally liable for copyright infringement.   On January 27, 2010, Defendants Healio Health, Inc., Healthy Toes, LLC, Pain Management Technologies, d.b.a. PMT Medical, and Joshua Lefkovitz (collectively "Defendants") filed their Memorandum in Opposition to Plaintiff's Second Motion for Partial Summary Judgment (ECF Docket No. 306) ("Opposition").   In their Opposition, Defendants claim that genuine issues of material fact exist as to all of the claims in FenF's motion.   Defendants' Opposition, however, contains correspondingly few facts and relies substantially on illogical conclusions and outdated and/or inapplicable cases.   As a result, Defendants' have failed to establish any genuine issues of material fact as to any of the above cited claims.

Based on the Memorandum in Support of Plaintiff's Second Motion for Partial Summary Judgment and this brief, Plaintiff's second motion for summary judgment should be granted.

## I.   RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

The statement of facts submitted by the Defendants in their Opposition is rife with speculation, unsupported conclusions, and unmitigated misrepresentations.  As a result, FenF submits the following response to the Defendants' Statement of Facts:

- Defendants contend that because it "was customary to encourage the sale of the plaintiff's product", Healio Health displayed photographs and illustrations of the plaintiff's product and the product name on the Healio Health website. (Opposition, p. 1.)

In support of this statement, Defendants cite to the deposition of Joshua Lefkovitz. According to the Lefkovitz Deposition, it was Defendants' policy to "ask our suppliers for -- you know, if we could use their literature--."  (Deposition of Joshua Lefkovitz, taken on April 6, 2009, ("Lefkovitz Dep. I.") 122.)[1]   Defendants' statement is misleading at best.   While Defendants may contend it was "customary", there is nothing in the record supporting that it was "customary" for FenF to provide anyone who purchased its product for resale any information whatsoever.  In fact, it was not "customary" or the case.  (Declaration of Frederic Ferri ("Ferri Decl.") ¶3.)[2]   Lefkovitz was unable to recall if Defendants asked FenF for permission to use FenF's copyrighted work on the Healio Health website and could not produce any proof that they had done so.  (Lefkovitz Dep. I. 124-25)  In fact Defendants have yet to produce any such proof. Further, Mr. Ferri confirms that he did not give Defendants permission to use the work.  Ferri Decl. ¶4.)  Defendant Lefkovitz later admitted that he or someone from Healio Health "cut and pasted" those images from FenF's website.  (Lefkovitz Dep. I. 171.)  Therefore, Defendants' did not even follow their own "policy" of first asking the supplier for permission before using their copyrighted images.   Thus, Defendants misappropriated the copyrighted images without

---

[1] Relevant pages and exhibits of the Deposition Joshua Lefkovitz, taken on April 6, 2009, are attached as Ex. 1.
[2] The Declaration of Frederic Ferri and relevant exhibits are attached as Ex. 3.

permission from FenF.  Furthermore, it certainly was not "customary" to continue to use the copyrighted images long after Defendants no longer had any YogaToes® to sell.

- Defendants allege that they were "assured by patent counsel that an identical product would not infringe on a valid and enforceable patent" and so "Healio Health manufactured and - for a period of about nine months - sold a toe stretcher like the plaintiff's product, which was branded as 'HealthyToes.'"  (Opposition, p. 1.)

- Further, without support, Defendants argue that they "undertook to manufacture and import a similar product" to FenF's after obtaining the advice of counsel as to FenF's intellectual property rights.  (Opposition, p. 5.)

The written record of Mr. Gugliotta's opinions begin on June 3, 2007. (See Lefkovitz Dep. I. 253-255, Exhibit 25.)  However, Defendants sent samples of authentic YogaToes® to a Chinese manufacturer in November of 2005 (19 months earlier) to obtain a price quotation for manufacturing exact knock-offs of FenF's YogaToes®.  (Declaration of Beckett Brelo Witt ("Witt Decl."), ¶4.)[3]  On August 7, 2006, Defendants continued to seek additional price quotations from other foreign manufacturers.  (Deposition of Joshua Lefkovitz taken on April 9, 2009 ("Lefkovitz Dep. II.") 467-470, Ex. 76.)[4] On November 6, 2006 Defendants told their Taiwanese manufacturer to create an exact copy of FenF's YogaToes®, down to the patented "openable" toe holes.  (Lefkovitz Dep. II. 525-527, Ex. 87,)  On Sept 30, 2006 Defendant Lefkovitz already had a price quote and was deciding upon a name for the product.  (Lefkovitz Dep. II. 531-536, Ex. 91.)  Thus, Defendants intended and undertook to manufacture and import an infringing product *before* they sought counsel regarding the extent of the FenF's intellectual property rights.

Allegedly, at some point prior to June 3, 2007, Defendants retained and consulted with patent counsel, John Gugliotta, to provide an opinion on whether Defendants' product would

---

[3] The Declaration of Beckett Brelo Witt and accompanying Exhibits were previously filed as an attachment to Plaintiff's Second Motion for Partial Summary Judgment, ECF Docket No. 281 as Exhibit 7.
[4] Relevant pages and exhibits of the Deposition of Joshua Lefkovitz, taken on April 9, 2009, are attached as Ex. 2.

infringe the YogaToes® patent or the Genki-Kun patent.   (Deposition of John Gugliotta taken May 6, 2009 ("Gugliotta Dep.") 88-96, Ex. 25.)[5]  Neither Defendants nor their counsel, however, can recall when Gugliotta was retained on this issue.  (Id.; Lefkovitz Dep.I. 238-239.)  There is no evidence in the record which establishes when Defendants retained Gugliotta or when Defendants first met with Gugliotta regarding this issue.  In any event, the evidence shows that Defendants began their scheme of copying YogaToes® long before they consulted with Mr. Gugliotta.   The earliest letter from Mr. Gugliotta on the subject is dated June 3, 2007. Defendants began manufacturing an identical copy of YogaToes® on November 6, 2006 (7 months before the June 3, 2007 Gugliotta letter).  (Lefkovitz Dep. 526-27, p 6 of Ex. 87(invoice from Sing Bwo, Enterprise, Co. Ltd.))  Then Defendants began selling the Healthytoes product in April of 2007 (3 months earlier).   (Lefkovitz Dep. at p. 585-87 and Exhibit 108.)   Thus, Defendants' argument that they relied on counsel is directly controverted by the established facts in this case.

- Defendants falsely state that Defendant "Pain Management Technologies, did not sell toe stretchers and was marginally involved, if at all, with toe stretchers." (Opposition, p. 2.)

Based on the evidence, Pain Management Technologies, dba PMT Medical, Inc. ("PMT Medical") was the original importer of record for the infringing Healthytoes device.  (Lefkovitz Dep. I, 175; Exhibit 8 (FILED UNDER SEAL) 662-665, Ex. 124.)[6]  PMT Medical also paid the invoices from Healthytoes' manufacturer between July 13, 2007 and January 22, 2008. (Declaration of Malisheia Douglas ("Douglas Decl.") ¶ 20, Ex. 13.)[7]  Thus, PMT Medical was

---

[5] Relevant pages of the Deposition of John Gugliotta are attached herein as Ex. 6.
[6] Previously filed under seal as an attachment to the Memorandum in Support of Plaintiff's Second Motion for Partial Summary Judgment, ECF Docket No. 281 as Exhibit 8.
[7] The Declaration of Malisheia Douglas was previously filed under seal as an attachment to Plaintiff's Second Motion for Partial Summary Judgment, ECF Docket No. 281 as Exhibit 5.

more than marginally involved with the infringing toe stretchers; it was the financial organization supporting the scheme.

- Due to the Defendants' "successful marketing and internet presence, the Yoga Toes product increased in popularity and in sales volume." (Opposition, p. 3.)

Defendants have offered no evidence in support of their contention that the YogaToes® product increased due to Defendants' marketing and advertising presence.  Defendants have also failed to negate the inference that the popularity and success of FenF's YogaToes® product was a result of FenF's patented innovation and product awareness created by FenF's investment in marketing and advertising totaling over two million dollars.  (Ferri Decl. ¶5.)  In fact, as Defendant Lefkovitz testified, Defendants were *surprised* at the large number of sales of YogaToes® as FenF's product quickly became one of Defendants' top sellers when they first began selling YogaToes®.  (Lefkovitz Dep. II 363-367, Exs. 50-51)(emphasis added).  The record is completely devoid of any evidence showing that Defendants did any marketing, advertising, or had any substantial Internet presence in the marketplace that increased the sales of YogaToes®.

- Defendants speculate that "the plaintiff realized it no longer needed distributors and resellers, and could capitalize on this newfound market through direct sales" because "the defendants successfully marketed the plaintiff's products and increased market awareness." (Opposition, p. 3)

Again, Defendants have failed to cite to any evidence in support of this broad conclusion. Defendants never questioned Mr. Ferri as to why he stopped selling the YogaToes® product to wholesalers and distributors.  (Deposition of Frederic Ferri, taken on October 6, 2009 ("Ferri Dep. II") 324-325.)[8]  Mr. Ferri later confirmed that FenF ended the business relationship because of Healio Health's non-compliance with FenF's policies and procedures.  (Ferri Decl., ¶2)

---

[8] The Deposition of Frederic Ferri, taken on October 6, 2009 ("Ferri Dep. II") and accompanying exhibits are attached as Exhibit 5.

- According to Defendants, "the plaintiff ceased selling inventory to the defendants in 2006." (Opposition, p. 3.)

FenF, in fact, terminated any business relationship with Defendants in December of 2005. (Ferri Decl., ¶2.)  In April 13, 2006, Defendants, with actual knowledge that FenF no longer wanted to do business with Defendants and motivated solely by the desire to continue to sell YogaToes® to meet customer demand while their identical copy was being manufactured, placed an order for 240 pairs of YogaToes®, without FenF's actual knowledge.  Deposition of Frederic Ferri, taken on April 20, 2009 ("Ferri Dep. I.") 247-249, Ex. 231.)[9]

- Without any admissible support, Defendants argued that "[a] number of toe and finger stretchers and straighteners with slits and slots for fingers and toes predated the plaintiff's patent application." (Opposition, p. 4.)

First, in support of this statement, Defendants cite to the Affidavit and Report of Jay R. Campbell.  In conjunction with its Opposition to Defendants' Motion for Summary Judgment, FenF filed a motion to exclude the expert report of Jay R. Campbell.  (See ECF Docket No. 308.) Further, Defendants fail show which patents they are referring to, how these patents relate to the patents at issue in this case, or whether the mentioned slits and slots for fingers and toes are open or openable.  (Opposition, p. 4.)  Furthermore, the record is devoid of any "finger stretchers."

- In their statement of facts, Defendants misleadingly characterize the fact that FenF "acknowledges that the only reason these two works were registered was to pursue these claims against the defendants for infringement." (Opposition, p. 4.)

In copyright infringement cases, a plaintiff can not file an action unless the copyrighted material is first registered. 17 U.S.C. 411(a).  In all cases, the plaintiff must register the copyright with the Library of Congress before filing suit.  17 U.S.C. §411.  Thus, despite Defendants' implications, Mr. Ferri's registration of the copyright to pursue this claim was not nefarious, but was an attempt to protect FenF's valid intellectual property rights.

5

- Defendants repeatedly falsely state that they never received notice of their infringement until this action was initiated. (Opposition, p. 2, 3, and 5.)

Defendants' statement in this regard is misleading at best as FenF provided actual notice to Mr. Lefkovitz himself. Defendant Lefkovitz admits that he received a phone call from someone at Yoga Pro informing him that Defendants were infringing on FenF's patents. (Lefkovitz Dep. II. 623-624.) The phone call took place on May 21, 2007, which was prior to the filing of the instant action. (Kissel Aff.)[10] Even though no one from FenF indicated that anything further would be provided to Defendant Lefkovitz, as a result of this phone call, Lefkovitz anticipated receiving a cease and desist letter from Yoga Pro regarding this issue. (Lefkovitz Dep. II. 623-625, Ex. 115.) Moreover, FenF did issue a cease and desist letter regarding Defendants' listing the infringing Healthytoes product on amazon.com. (Exhibit 9, (FILED UNDER SEAL)) Thus, he understood that FenF wanted Defendants to cease and desist selling their infringing product as of May of 2007. Defendants received notice of the cease and desist and complained, "Yoga Toes has persisted and has terminated another one of our relationships. Amazon.com – This is a big deal now, and we need your urgent opinion." (Exhibit 9 (FILED UNDER SEAL))

- Defendants attempt to justify their false marking of their product as patented because "defendants understood the language from patent counsel to mean that the HealthyToes product was patented." (Opposition, p. 6.)

Mr. Gugliotta's earliest documented letter dated June 3, 2007 compares Healthytoes to YogaToes®. In reference to Defendants' Healthytoes, the letter clearly states that "[t]here is no patent pending for this product." (Lefkovitz Dep. 249- 255, Ex. 25.) Based on this letter Defendants could not reasonably have believed that they owned a patent. The evidence of record

---

[9] The Deposition of Frederic Ferri, taken on April 20, 2009 ("Ferri Dep. I") and accompanying exhibits are attached as Exhibit 4.
[10] The Affidavit of Jeanette Kissel was previously filed as an attachment to the Memorandum in Support of Plaintiff's Second Motion for Partial Summary Judgment, ECF Docket No. 281 as Exhibit 12.

shows that Defendants' patent attorney never advised Defendant Lefkovitz to mark the product as "patented."  (Gugliotta Dep. 193.)  Yet, in an effort to overcome buyer concern when Defendants were asked in sales calls, "Are you patented?" Defendants used the false patent markings to build buyer confidence.  Deposition of Phil Getz, taken on April 9, 2009 ("Getz Dep.")[11] 122-125, Exs. 154, 162, 178, 183.)  Thus, Defendants repeatedly advertised their Healthytoes product as "patented".  (Getz Dep. 123-124, Ex.162.)

## II.  ARGUMENT

### A.  Patent Infringement

#### 1.  Defendants Have Not Presented Any Evidence that the Healthytoes Product Does Not Infringe the '915 and '929 Patents.

Defendants do not deny that the accused Healthytoes toe stretchers include every limitation of Claim 1 of the '939 Patent.  (Defs.' Resp. to Pl.'s Req. for Admis., Reqs. 76-80.)[12] Nor do they deny that, by engaging in the activity of forming or making the accused device, they infringe Claim 33 of the '915 Patent.  Thus, Defendants offer no opposition with respect to infringement.  Instead Defendants' conflate the issue of infringement and validity.  Patent infringement and patent validity are treated as separate issues.  *Pandrol, USA v. Airboss Railway Prods., Inc.*, 320 F.3d 1354, 1365 (Fed. Cir. 2003).  Defendants inaccurately state that an "invalid patent claim cannot be infringed."  (Opposition, at p. 7.)  Though an invalid claim cannot give rise to *liability* for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity.  *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983)(emphasis added).  As to Plaintiff's Second Motion for Partial Summary Judgment, the only issue is whether Defendants' infringe claims 1 and 33 of the '939 and '915 Patents, respectively.  The facts indisputably confirm that

---

[11] Relevant pages and exhibits of the Deposition of Philip Getz, taken on April 9, 2009, are attached as Ex. 7.
[12] Defs.' Resp. to Pl.'s Req. for Admis. are attached to Plaintiff's Second Motion for Partial Summary Judgment as Exhibit 15.

Defendants infringe both patents as a matter of law.

**B.  Patent Validity**

    1.  Defendants Have Not Presented a *Prima Facie* Case of Obviousness by Clear and Convincing Evidence.

Defendants oppose FenF's motion for summary judgment by alleging the '939 and '915 Patents are invalid.  (Opposition at p. 7.)  However, Defendants fail to meet their burden of proof on the issue of invalidity.  Under 35 U.S.C. § 282, a patent is presumed to be valid.  Thus, the evidentiary burden to show facts supporting a conclusion of invalidity rests on the accused infringer.  Defendants must meet this burden by clear and convincing evidence.  *Takeda Chemical Industries, Ltd. v. Aplhapharm Pty., Ltd.*, 492 F.3d 1350, 1355  (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 1739 (U.S. 2008).

The presumption of patent validity never shifts but rather remains on the challenger throughout the litigation proceedings.  *ACS Hosp. Systems, Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574-75 (Fed. Cir. 1984).  A consequence of the presumption of validity is that a patentee need not offer any evidence of validity unless and until a challenger establishes a *prima facie* case of invalidity.  *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986).  Whereas a *prima facie* case of obviousness can be overcome by a mere preponderance of the evidence, the Federal Circuit maintains that clear and convincing evidence is necessary to overcome the presumption of validity.  *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986).

Obviousness is a legal conclusion based on underlying facts of four general types, all of which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of a person of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness. *Graham v. John Deere Co. of*

*Kansas City*, 383 U.S. 1, 17 (1966).  Defendants have failed to establish a *prima facie* case of obviousness and have failed to rebut the presumption of validity afforded by 35 U.S.C. § 282.

   2.   The Examiner Considered Prior Art Similar to the Patents Offered By Defendants
        to Show Obviousness.

Defendants have simply pointed to several patents, but have not shown any evidence as to why the combination of references would render FenF's patents obvious.  In the prosecution of the '939 and '915 Patents, the Examiner cited both manicure and pedicure devices as part of the prior art examined.  While Defendants have cited different pedicure and manicure devices from the patents cited by the Examiner, both Defendants' citations and the patents cited by the Examiner have substantially the same disclosure.

For example, Defendants cite U.S. Design Patent D306,084 which discloses a shoe with slots or slits.  Likewise, the Examiner cited U.S. Design Patent D481,828, which also discloses a shoe with slots or slits through which one inserts the toes.  *See* Figures A & B below.





Figure A:  US Design Patent
D306,084 cited by Defendants

Figure B:  US Design Patent
D481,828 cited by Examiner

Defendants also cite Great Britain Patent No. 525,059 which is a pedicure device disclosing "slots", having reference numeral 4, "extending from the holes to one edge of the member so that the toes or fingers can be removed from the device without withdrawing them through the holes." (Great Britain Patent No. 525,059, p. 1.)  Defendants then cite US Patent No. 2,472,997 which discloses "split" to "permit the rings to expand slightly and to gently urge the

toes in to correct position." ('997 Patent col. 1, ll. 11-15.).  However, the Examiner in the USPTO cited similar patents, including U.S. Design Patents D415,858 and D439,704, both of which have openings at one edge so that toes can be removed from the device without withdrawing them through the holes.  Both devices cited by the Examiner are illustrated in Figures D & F below.



Figure C:  Great Britain Patent 525059 cited by Defendants



Figure D:  US Design Patent No. D415,858 cited by Examiner



Figure E:  US Patent No. 2,472,997 cited by Defendants



Figure F:  US Design Patent No. D439,704 cited by Examiner

Defendants' have failed to provide any relevant disclosures in the prior art which were not already considered by the Examiner.  As a result, an issued patent is not to be invalidated by cited prior art, where the cited prior art is merely cumulative to what the USPTO has already considered.  *W.L. Gore & Assoc. v. Garlock, Inc.*, 721 F.2d 1540, 1553 (Fed. Cir. 1983).  The Examiner issued the '939 and '915 Patents to FenF in view of this prior art.  Defendants' mere recitation of the above patents fails to disclose any relevant, pertinent prior art that was not already considered by the Examiner during the prosecution of the FenF patents.

    3.  <u>FenF's Patented Inventions Are Not Obvious in Light of the Prior Art.</u>

As was the case with much of the prior art cited by the examiner, the pedicure devices and toe brace devices which Defendants have mentioned share only superficial similarities with FenF's openable toe hole toe stretcher, *i.e.*, each device fits on the toes.  FenF's device, however, is unrelated to pedicure devices in *intent, function, design, and result*.  First, the intent of the openable toe hole toe stretcher design was to facilitate developing and maintaining a quality toe exercise program by stretching/articulating and exercising the toes and feet.  (Ferri Decl., ¶8.) The openable toe holes are especially helpful for the elderly and impaired to maintain their exercise routine.  (Id.)  Unlike a pedicure device or a toe brace, the toe stretcher functions to provide flexibility, strength, and stretching of the toes which is often initially painful.  (Id.) Pedicure and toe brace devices were designed to hold the toes in place. (*See* Great Britain Patent No. 525,059, p. 1 (stating that the object of the pedicure device is to "provide simple and effective means whereby varnishing, tinting, and other operations, on toe or finger nails may be more readily effected than heretofore"); *see also* U.S. Patent No. 2,471,997 col. 1, ll. 11-15 (stating that the toe brace is "for retaining the toes in the correct relative position").)  FenF's openable toe hole toe stretcher is designed to stimulate the toes and feet.  (Ferri Decl., ¶8.) The result is that the FenF device provides an exercise and therapeutic program for the toes and feet, which anyone can use especially the elderly and impaired.  (Id.)

Rather than repeat each argument previously presented, FenF hereby incorporates by reference its arguments with respect to obviousness as set forth in its Opposition to Defendants' Motion for Partial Summary Judgment, namely, Section II.B.1 through 3.  (ECF Docket No. 313)

### C.  **Trademark Infringement**

1. Plaintiff's Marks are Valid.

FenF also owns two federally registered trademarks for YogaToes® (collectively, the "YogaToes® Marks")[13].  (Ferri Decl., ¶¶6-7.)  Federal registration of a trademark on the Principal Register of the U.S. Patent and Trademark Office (the "USPTO") is *prima facie* evidence of the registrant's ownership and exclusive right to use the mark.  *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) (citing 15 U.S.C. §§ 1057(b) and 1115(a)).  Because FenF's YogaToes® Marks are registered on the USPTO's Principal Register, they are presumed valid.  *See* Lanham Act § 7(b), 15 U.S.C. § 1057(b).

Defendants allege that the YogaToes® Marks are not valid.  As proof, Defendants allege that a third party has used the mark, namely "Yoga Toes Yoga Studio" in Reyes, California.  (Opposition, p. 11.)  Nevertheless, Defendants have failed to offer any evidence that this third party has used the mark on similar goods.  The Yoga Toes® trademark registrations are registered for use with "an orthopedic device to stretch and exercise the toes and feet" and "manual toe exercisers to stretch, strengthen and maintain toes and feet."  Defendants have failed to provide any evidence that the "Yoga Toes Yoga Studio" is using the mark on "orthopedic devices" or "manual toe exercisers".  Rather, Yoga Toes Yoga Studio advertises yoga classes and instruction

---

[13] The YogaToes Marks include the mark "YOGA TOES" Reg. No. 3,253,636 and the mark "YOGATOES", Reg. No. 3,430,215.  In their Opposition Defendants claim that they were not put on notice regarding the second trademark registration for "YOGATOES".  However under Fed.Rules Civ.Proc.Rule 8(a)(2), the function of a complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests; a complaint need not set down in detail all the particularities of a plaintiff's claim.  *Clark v. Walt Disney Co.*, 642 F.Supp.2d 775, 778-79 (S.D. Ohio 2009).  Additionally, a complaint merely serves to put defendants on notice, and should be "freely amended or constructively amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant."  *Luckett v. Conlan*, 561 F.Supp.2d 970, 974 (N.D. Ill. 2008).  Here, FenF has not added a new claim but has simply placed Defendants on notice that is owns trademark registrations for both terms.  Defendants could not have reasonably believed that they could escape liability for trademark infringement by using the word "YogaToes" instead of "Yoga Toes" when each term is a confusingly similar variation of the other.  As such, Defendants' argument that it was not put on notice is without merit.

behind a feed barn in Reyes, California.  (See Printout of the website at www.yogatoesstudio.com, attached herein as Exhibit 8.)  Thus, Defendants have failed to rebut the presumption afforded by FenF's trademark registrations.

Defendants also contend that FenF's failure to institute litigation against others is evidence that the YogaToes® Marks are invalid.  (Opposition, p. 11.)  The existence of other possible infringers is irrelevant to Defendants' wrong-doing.  *Engineered Mechanical Services, Inc. v. Applied Mechanical Technology, Inc.*, 584 F.Supp. 1149, 1159-1160 (M.D. La. 1984).  "The owner of a mark is not required to police every conceivably related use," in order to maintain the effectiveness of the mark.  *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 486 F.Supp. 414, 422-23 (S.D.N.Y.1980).  Further, the evidence of record shows that FenF has pursued infringers.  FenF has prosecuted and sought injunctions against Defendants Healio Health Inc., Healthy Toes, LLC, Joshua Lefkovitz and twelve other entities.  (Plaintiff's Third Amended Complaint, ECF Docket No. 188.)  Moreover, Defendants have failed to cite a single case that stands for the blanket proposition that a trademark owner must institute litigation against every conceivable infringing use or the mark becomes invalid.  On the contrary, a trademark owner's failure to pursue potential infringers does not, in and of itself, establish that the mark has lost its significance as an indicator of origin.  *Exxon Corp. v. Oxford Clothes, Inc.*, 109 F.3d 1070, 1080 (5th Cir. 1997).  A trademark owner is not bound to take on more than one infringer at a time.  *Cuban Cigar Brands N. V. v. Upmann International, Inc.*, 457 F. Supp. 1090 (S.D.N.Y. 1978).  Therefore, Defendants have not rebutted the presumption of validity and summary judgment should be awarded to FenF.

    2.  Defendants' Used Plaintiff's Marks in Commerce.

Defendants assert that a question of fact remains as to whether the Defendants' infringement of FenF's Marks was use of the trademarks in commerce.  Defendants only support

of this argument are two cases out of two of the district courts in the state of New York: *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F.Supp.2d 188 (E.D.N.Y. 2007) and *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F.Supp.2d 402 (S.D.N.Y. 2006). These cases are not binding on this Court. Further, the holdings of these cases were recently criticized by the Second Circuit in *Rescuecom Corp. v. Google, Inc.*, 526 F.3d 123, 129 (2d Cir. 2009), which held that the district court cases over-read the holding of *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005). The court also held that Google's suggestion and sale of trademarks as keywords to competitors of the trademark owner was use of the trademark in commerce and justified a cause of action under the Lanham Act. *Id.* at 130.[14]

Defendants have used FenF's registered trademarks in the metatags of the Healio Health and Healthytoes websites and have also purchased these trademarks as keywords through Google's AdWords program. (Douglas Decl., ¶¶6-10, Exs. 2-6.) This is use of FenF's trademarks in commerce and constitutes actionable trademark infringement.

Moreover, Defendants have also infringed FenF's trademarks by using the marks directly and visibly on their web pages. (Opposition, p. 24-25.) FenF's trademarks were visibly incorporated into a link to the web-page for Defendants' infringing Healthytoes. (Lefkovitz Dep. I. 280-282, Ex. 34.) The link listed Defendants' Healthytoes as the "New!!! 2nd Generation YogaToes" in an attempt to pass off their infringing product as FenF's legitimate YogaToes®

---

[14] Various other courts have also held that use of the trademark in metatags of a competitor's website or as keywords is actionable trademark infringement. *See Tdata, Inc. v. Aircraft Technical Publishers*, 411 F.Supp.2d 901, 907 (S.D. Ohio 2006); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1025-1026 (9th Cir. 2004); *Brookfield Communications, Inc. v. West Coast Entmt. Corp.*, 174 F.3d 1036, 1065 (9th Cir. 1999); *Eli Lilly and Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir. 2000); *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, No. C 03-5340, 2007 WL 1159950, *5-6 (N.D. Cal. April 18, 2007); *Government Employees Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700 (E.D.Va. 2004); *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.Supp.2d 273, 278 (D.N.J. 2006); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F.Supp.2d 310, 321-22 (D.N.J. 2006); *Internat'l Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672, 677 n.3 (N.D.Ill. 2006); *Edina Realty, Inc. v. TheMLSonline.com,* Civ. No. 04-4371JRTFLN, 2006 WL 737064, *3 (D. Minn. 2006); *J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*, No. 06-0597, 2007 WL 30115, *7 (E.D. Pa. Jan. 4, 2007).

product.  (Id.)  *See Taubman Co. v. WebFeats*, 319 F.3d 770, 775 (6th Cir. 2003).  Additionally, Defendants used FenF's trademarks in the title of a video advertisement for their Healthytoes product on the third-party website www.youtube.com.  (Lefkovitz Dep. II. 698-700, Ex. 134.) Thus, Defendants have sold and advertised their infringing Healthytoes products using FenF's YogaToes® Marks in a "bait-and-switch" scheme, which is use in commerce.  15 U.S.C. § 1114.

      3.  <u>Defendants' Use of FenF's Marks Create a Likelihood of Confusion.</u>

Defendants argue that significant issues of fact remain in dispute as to three of the eight factors set forth in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982):  similarity of marketing channels, actual confusion, and intent.

**Similarity of Marketing Channels.**  Defendants assert that there are significant differences in the marketing channels because FenF uses print media to advertise its products whereas Healio Health markets its products on its website and Healthytoes sells its products through distributors.  (Opposition, p. 12.)  This argument, however, ignores the fact that all three parties advertise and market their products on the Internet.  (Ferri Dep., 217-218; Lefkovitz Dep. I. 115-116, 271-282; Lefkovitz Dep. II. 333-335; Douglas Decl., ¶¶17-18 and Exs. 10 and 11.) *See Audi AG v. D'Amato*, 469 F.3d 534, 544 (6th Cir. 2006) (holding that both Audi and the defendant used similar marketing channels because both used the internet, even though Audi also engaged in sales through dealers).

**Actual Confusion.**  Defendants argue that because FenF cites only four instances of actual confusion, FenF has failed to show actual confusion.  (Opposition, pp. 12-13.)  The Sixth Circuit has recognized that evidence of actual confusion in trademark infringement cases is difficult to produce.  *Wynn Oil, Co. v. Thomas,* 839 F.2d 1183, 1188 (6th Cir. 1988).  As a result, the lack of such evidence does not preclude a finding of a likelihood of confusion.  *Id.* Considering the difficulty in obtaining such evidence and the fact that both Healthytoes and

YogaToes® were both sold on the internet for less than one year, four instances of actual confusion are significant. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) (holding that affidavits from five individuals who were confused between the services offered by the plaintiff and the defendant was sufficient to establish actual confusion).

**Defendants' Intent.** Defendants assert that issues of fact remain as to the Defendants' intent in using FenF's trademarks because Defendants first used the trademarks while Healio Health was reselling FenF's authentic YogaToes® product and FenF never told Defendants to stop using the trademark. (Opposition, p. 13.) In support of this argument, Defendants cite Defendant Lefkovitz's self-serving testimony that websites frequently display out-of-stock products. (Id.) While Defendant Lefkovitz testimony is unsupported by any evidence on the record, this practice does not excuse Defendants' continued use of FenF's trademarks. In this case, Defendants did not just run out of authentic YogaToes® to sell through their website; they had been informed, on two separate occasions, that FenF would no longer sell the YogaToes® products to them for resale. (Ferri Decl., ¶2; Lefkovitz Dep. II. 461-468, Exs. 73, 75 and 76.) Thus, even if Defendants were authorized to use FenF's trademarks while they were reselling YogaToes®, FenF terminated the relationship, including all rights to use the trademarks, and Defendants should have known that the continued use of FenF's trademarks was an infringement. *U.S. Structures, Inc.*, 130 F.3d at 1190.

Further, Defendants' argument omits the fact that Defendants also used FenF's Yogatoes® trademark to market and sell their own infringing product. Defendants admit to using FenF's trademarks in a bait-and-switch scheme to divert consumers to their competing and infringing Healthytoes product. (Witt Decl., ¶6, Ex. 3; Lefkovitz Dep. I. 288-291, 305-307, Ex. 36 and 41; Lefkovitz Dep. II. 531-536, 584-586, 596-605, 611-613, Exs. 91, 108, 110, and 112.)

Defendants cannot contend that any implied license from FenF to use the YogaToes® marks allowed Defendants to use the marks to sell their competing and infringing Healthytoes products.

Defendants also cite two cases where the court did not find a likelihood of confusion despite the fact that the defendant used the plaintiff's mark: *Day v. Video Connection of Solon, Ohio*, 602 F.Supp. 100, 103 (N.D. Ohio 1982) and *Conopco, Inc. v. May Dept. Stores Co.,* 46 F.3d 1556 (9th Cir. 1991). Both cases are distinguishable from the facts in this case. *Day* involved a ruling on the plaintiff's motion for a preliminary injunction, which has a different standard than liability for trademark infringement. *Day*, 602 F.Supp. at 102-103. The court found that, while the defendant used the same mark as the plaintiff, the markets of the parties did not overlap geographically. *Id.* at 104. Additionally, the plaintiff failed to cite any evidence of intent and actual confusion. *Id.* This prevented the plaintiff from proving a strong likelihood of confusion. *Id.* Further, the court held that the imposition of an injunction would substantially harm the defendants. *Id.*

In this case, both FenF and Defendants market their products nationally through the use of the Internet. (Ferri Dep. I. 217-218; Lefkovitz Dep. I. 115-116, 271-282; Lefkovitz Dep. II. 333-335; Douglas Decl., ¶¶17-18 and Exs. 10 and 11.) Also, as shown above, FenF has provided evidence that Defendants' use of the YogaToes® trademarks caused actual confusion and that Defendants intentionally used FenF's marks to confuse consumers. Finally, unlike in the preliminary injunction setting, it is irrelevant whether Defendants are harmed by an injunction.

The second case, *Conopco*, involved the use of Conopco's trademark on a store-brand generic. In that case, the defendant only used the plaintiff's trademark in a comparative statement and the defendant's product prominently featured the defendant's logo, which is truthful and permissible use of the plaintiff's trademark. *Conopco,* 46 F.3d at 1571.

Additionally, plaintiff's and defendant's products were sold alongside one another for over ten years without any evidence of actual confusion. *Id.* at 1568. Thus, the court held there was no evidence of a likelihood of confusion. *Id.* at 1571. Here, Defendants did not use FenF's trademarks comparatively, but instead labeled their product as the "New!!! 2nd Generation Yogatoes." Moreover, while the parties only marketed their products on the Internet for one year, there is significant evidence of actual confusion between FenF's product and Defendants' product.

Therefore, Defendants have failed to raise a genuine issue of material fact as to whether they are liable for trademark infringement and FenF is entitled to summary judgment on this claim as a matter of law.

### D. **False Advertising**

1. Plaintiff has Established that Defendants' False Statements Influenced Consumer Decisions and That the Statement Harmed Plaintiff.

The record contains undisputed evidence that Defendants' false statements influenced consumer buying decisions, just as Defendants intended. To succeed on a claim of false advertising under the Lanham Act, plaintiff must establish that the defendant's deception is likely to influence the purchasing decision. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002). A plaintiff alleging false advertising under the Lanham Act may establish materiality of the defendant's alleged deception by proving that the defendant misrepresented an inherent quality or characteristic of the product. *Id.* By stating that Healthytoes were the "New!!! 2nd Generation YogaToes", Defendants misrepresented an inherent quality of their product, namely that Healthytoes were indeed authentic YogaToes®. Because that statement is false and misrepresented an inherent quality or characteristic, materiality in influencing consumer's decisions is established.

Additionally, the false statement that Defendants Healthytoes product was a "New!!! 2nd Generation YogaToes" directly harmed FenF. These false statements influenced consumers into believing that they were actually purchasing an improved version of YogaToes®, as shown by the fact that many consumers left positive feedback for "YogaToes," rather than Healthytoes. (Lefkovitz Dep. I. 261-266, Ex. 26; Witt Decl., ¶8, Ex. 5.)  At least one consumer attempted to redeem FenF's YogaToes® coupons on Defendants' Healthytoes product.  (Witt Decl., ¶7, Ex. 4.)  Finally, when a potential distributor in the United Kingdom asked for a shipping quote for YogaToes®, Defendants' sales manager provided a quote for Healthytoes and never corrected the confusion.  (Getz Dep. 112-114, Ex. 158.)  FenF was directly harmed from these false statements because each of the sales listed above were sales which rightfully belonged to and would have otherwise been given to FenF absent Defendants' false statements.  Thus, the evidence of record conclusively proves that Defendants are liable for false advertising.

### E. **False Marking**

1. The Evidence of Record Conclusively Demonstrates That Defendants' False Marking was Done with the Intent to Deceive the Public.

In their Opposition, Defendants claim that they marked the Healthytoes product as patented because they believed that it was appropriate to do so.  (Opposition, p. 12.)  However, Defendants' patent attorney never advised Defendant Lefkovitz to mark the product as "patented."  (Gugliotta Dep. 193.)  In an effort to overcome buyer concern that the Defendants were infringing the known FenF patent, Defendants used the false patent markings to build buyer confidence.  Thus, Defendants repeatedly advertised their Healthytoes product as "patented" (Getz Dep. 123-124, Ex.162.)

No reasonable juror would believe Defendants' claim that this false marking was done under the advice of counsel, because Defendants' patent counsel never told Defendant Lefkovitz that Healthytoes were patented.  (Id. at 88-91, 166-168, Exs. 25 and 23.)  Moreover, Defendant

19

Lefkovitz knew that he did not own a patent.  During deposition testimony Defendant Lefkovitz acknowledged his plan to "get [a] patent".  (Exhibit 8 (previously, FILED UNDER SEAL) 648-649, Ex. 121.)[15]  Logically, if Defendant Lefkovitz had planned to get a patent, he must have known that he did not already have one.  Defendants now attempt to twist the evidence and state that Lefkovitz reasonably believed he had a patent to prove that the false markings were without the required intent to deceive.  Nevertheless, Defendant Lefkovitz, knowing that he did not own a patent, personally indicated to his employee that he did own a patent or that he had a patent pending.  (Getz Dep. 95-97, Ex. 154.)  During deposition testimony Defendant Lefkovitz acknowledged his plan to place patent markings on the card insert for the Healthytoes product, which is precisely what his employee did.  (Exhibit 8 (previously, FILED UNDER SEAL) 648-649, Ex. 121.)[16]

The evidence of record is such that no reasonable juror would believe that Defendants, especially not Defendant Lefkovitz, thought he already owned a patent on the Healthytoes product.  As such FenF is entitled to summary judgment on the issue of false marking.

---

[15] Previously filed under seal as an attachment to the Memorandum in Support of Plaintiff's Second Motion for Partial Summary Judgment, ECF Docket No. 281 as Exhibit 8.
[16] Previously filed under seal as an attachment to the Memorandum in Support of Plaintiff's Second Motion for Partial Summary Judgment, ECF Docket No. 281 as Exhibit 8.

## F.     <u>Vicarious Liability for Copyright Infringement</u>

It is well established that a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation.  *A & M Records, Inc. v. M. V. C. Distributing Corp.*, 574 F.2d 312, 315 (6th Cir. 1978).   A corporate officer, therefore, cannot shield himself behind a corporation when he is an actual participant in the tort. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir. 1978).   The fact that an officer is acting for a corporation may also make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his responsibility.  *Id.*

All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.  *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2nd Cir. 1985).   Regardless of the defendants' actual knowledge of the removal or alteration of the copyright information, a party may be held vicariously liable for the actions of others.   *Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922, 925 (6th Cir. 2003).

Vicarious liability exists when (1) a defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an obvious and direct financial interest in the infringement.  *Id.*   These elements are independent requirements, and each must be present to render a defendant vicariously liable.   *Id.* Lack of knowledge of the infringement is irrelevant. *Id.*

Defendant Lefkovitz incorrectly asserts that he should not be held personally liable for Healio Health's copyright infringement.   In fact, the Court should hold Defendant Lefkovitz

liable under the theory of vicarious liability. There is no need for this Court to pierce the corporate veil in order to find Defendant Lefkovitz liable.

### G. **Willfulness**

#### 1. Defendants' Were Objectively Reckless in Infringing FenF's Patents.

According to *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), a plaintiff asserting willful patent infringement must prove that the defendant was objectively reckless in its infringement of the plaintiff's patent. Despite Defendants contentions, "[t]he state of mind of the accused infringer is not relevant to this objective inquiry." *Id.*

The only defense offered by Defendants in their Opposition is their reliance on the advice of their counsel. Obtaining the advice of counsel regarding patent infringement is evidence that the infringer acted in good faith that they did not infringe or that the patent was invalid. *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1225 (Fed. Cir. 2006). The advice of counsel, however, must be "competent" legal advice on which the defendant can rely. *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.* 976 F.2d 1559, 1580 (Fed. Cir. 1992). Thus, a defendant's reliance on the advice of counsel is not conclusive evidence that the defendant's infringement was not willful. *In re Hayes Microcomputer Products, Inc. Patent Litigation*, 982 F.2d 1527, 1543 (Fed. Cir. 1992).

Courts have found a legal opinion obtained by the defendant in a patent infringement case to be incompetent or unreliable based on a number of factors. In the case of *In re Hayes*, the Federal Circuit affirmed the jury's conclusion that the defendant willfully infringed the plaintiff's patent despite the fact that the defendant had obtained an opinion letter from counsel concluding that the plaintiff's patent was invalid. *Id.* The Federal Circuit found that the opinion letter had numerous problems including: (1) the failure to consider secondary considerations in

determining obviousness; (2) mischaracterizing the prior art, (3) failing to perform the best mode analysis; (5) only addressing invalidity and not infringement; and (6) only offering broad conclusory statements without any support. *Id.* at 1543. Further, the court questioned the nature of the opinion letter when counsel originally gave an oral opinion with less than all the information in November of 1986, but did not reduce the opinion to writing until May 1, 1987. *Id.* at 1544. Therefore, the Federal Circuit held that the letter "was more of a protective device than a genuine effort to determine before infringing whether the patent was invalid." *Id. See also, Minnesota Mining,* 976 F.2d at 1581 (holding that the advice of counsel was unreliable where the evidence that counsel relied upon had been obtained by the defendant who had a stake in the outcome); *Comark Comm'n, Inc. v. Harris Corp.,* 156 F.3d 1182, 1191 (Fed. Cir. 1998) (holding that the opinion of counsel was unreliable where the defendant failed to disclose all relevant information); *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985) (holding that the advice of counsel was unreliable because it was obtained long after the defendant had notice of the infringement and was a conclusory opinion that the patent was invalid without any supporting reasons); *Underwater Devices, Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1390 (Fed. Cir. 1983) (holding that a competent infringement and validity opinion should include an analysis of the patent's prosecution history).

Similarly, in this case, the opinion letter offered by Defendants lacks any in-depth analysis of the validity of FenF's patent and makes numerous broad and conclusory statements. In a letter dated June 3, 2007, Defendants' counsel, John D. Gugliotta, concludes that FenF's patents are invalidated by prior art. (Lefkovitz Depo., p. 253-54 and Exhibit 25.) The letter does not make any reference to obviousness. (Id.) Further, the letter only addresses invalidity and not any issues of infringement, much like the ineffective opinion letter in *In re Hayes.* (Id.)

23

The focus of Mr. Gugliotta's letter is on a comparison of a patent issued to Hiroyuki Funatogawa and FenF's first issued patent. (Id.) In comparing the two patents, Mr. Gugliotta allegedly looked at the independent claims of both patents. (Id.) The comparison lists the claim of the Funatogawa patent almost in its entirety. (Id.) The FenF patent claim, however, is limited to a single partial sentence. (Id.) According to Mr. Gugliotta's comparison, the only difference between the two patents was that Mr. Funatogawa's patent claimed a continuous band and FenF's contained a noncontinuous one. (Id.) Mr. Gugliotta then compared the actual products from Mr. Funatogawa and FenF, finding only a few differences between the two, but failed to determine whether the two products met the claims of the two patents compared and did not look at the prosecution history of either patent. (Id.) *See Underwater Devices,* 717 F.2d at 1390. Additionally, Mr. Gugliotta concluded that the noncontinuous band claimed in the FenF patent offers no 15 U.S.C. § 103(a) benefit. (Id.) Mr. Gugliotta, wrongfully, did not consider any possible benefit a noncontinuous band could offer over a continuous band and broadly concluded that the element was simply added to prevent the device from infringing the Funatogawa patent. (Id.) Finally, while Mr. Gugliotta makes reference to Mr. Funatogawa's Japanese patent registration, he later admits that he was unable to review this patent before he began his analysis. (Id.)

Like the counsel in *In re Hayes,* Mr. Gugliotta waited for a substantial period of time before he reduced his opinion to writing. While both Mr. Gugliotta and Defendant Lefkovitz were unable to determine an exact date when Mr. Gugliotta first gave a verbal opinion on the validity of the FenF patent, Defendant Lefkovitz testified that Mr. Gugliotta gave him a verbal opinion at least months prior to the date of the opinion letter. (Lefkovitz Dep. I. 242-244.) *See Minnesota Mining,* 976 F.2d at 1580 (holding that "oral opinions are not favored" in determining

a defense of reliance on the advice of counsel).  Moreover, Defendants began manufacturing and selling the Healthytoes product in 2006 before Mr. Gugliotta issued his opinion and with full knowledge of FenF's patent.  Therefore, Defendants' reliance on Mr. Gugliotta's expert opinion is questionable and the opinion letter appears to be "more of a protective device than a genuine effort to determine before infringing whether the patent was invalid."  *In re Hayes,* 982 F.2d at 1543; *see also, SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462 (Fed. Cir. 1997).

Again like the counsel in *In re Hayes*, Mr. Gugliotta's letter does not address infringement.  Mr. Gugliotta never analyzes non-infringement of the Healthytoes toe stretcher against the claims in the FenF patent.

Last, Mr. Gugliotta's third letter of November 9, 2007 contains gross mischaracterizations of patent law and facts.  First, a patent provides the owner with a right to exclude others from making, using and selling the patented article.  35 U.S.C. §271.  Thus, it is an exclusionary right, not a freedom to make, use or sell the patented article as Mr. Gugliotta states in his letter of November 9, 2007.  (See Gugliotta Dep. 172- 75, Exhibit 24.)[17]  Second, Mr. Gugliotta sets forth that the Defendants own a patent, which they did not at that time and do not as of this time.  (Id.)  Thus, Mr. Gugliotta's two letters cannot and do not provide any basis for Defendants to avoid willful infringement.

2.  <u>Defendants Cannot Assert That They Innocently Used FenF's Copyrighted Images after Defendants Became Aware That FenF No Longer Would Sell to Them.</u>

Willful copyright infringement requires evidence that a defendant infringed the plaintiff's copyright and knew or recklessly disregarded the likelihood of infringement.  *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009).  Good faith is a defense to willful copyright infringement if the belief is formed prior to the infringing acts and "if a

---

[17] Mr. Gugliotta admitted that he misstated the law in the deposition testimony cited above.

defendant has taken reasonable steps to assure fair use before infringement, not as 'post-hoc rationalization concocted to skirt liability.'" *Id.* at 279 (quoting *Zoomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 n. 9 (6th Cir. 2007)).

In their opposition, Defendants state that they first used FenF's copyrighted works in good faith in order to market and sell FenF's product. (Opposition, p. 23.) In support, Defendants cite to Defendant Lefkovitz's testimony that he ascertained the copyrighted works from Yoga Pro. (Id.) Later in his deposition, however, Defendant Lefkovitz admits that he or someone at Healio Health "cut" the images from FenF's website and "pasted them onto the Healio Health Website. (Lefkovitz Dep. I. 157, 165-167, and 171 (reviewing Third Amended Complaint (ECF Docket No. 188).) Based on this testimony, Defendant Lefkovitz did not obtain these images directly from FenF and has produced no evidence that the images were obtained and used with FenF's permission. Thus, Defendants did not take any reasonable steps to assure fair use of the images before using them.

Moreover, any fair use of the images ended when FenF informed Defendants that FenF would no longer sell the YogaToes® product to Defendants for resale. At that point, Defendants were no longer using FenF's copyrighted images to sell FenF's product. Instead, Defendants used the copyrighted images in conjunction with the advertisement and sale of their infringing Healthytoes product. FenF's copyrighted images appear on Healio Health's website next to a link for the "New!!! 2nd Generation YogaToes," which is a link to the Healthytoes product. (Memorandum Order and Opinion of September 4, 2009 (ECF Docket No. 264), pp. 2-3.) At the very least, Defendants continued use of FenF's copyrighted images after being informed that Defendants would no longer be able to resell authentic YogaToes® constitutes willful copyright infringement as a matter of law.

3. <u>Defendants' Willfully Infringed FenF's Trademarks with an Intent to Cause Confusion and Trade-Off on FenF's Goodwill.</u>

In their opposition, Defendants only raise contention with two facts asserted by FenF in support of its motion for summary judgment on willful trademark infringement. First, Defendants contend that Defendant Lefkovitz observation in an email that an ad for YogaToes® means more consumers for Defendants. (Opposition, p. 24.) Defendants, however, fail to offer any alternative meaning behind this statement. The only scenario in which advertisements for the YogaToes® product would increase sales of Defendants' infringing product is if Defendants were somehow diverting YogaToes® customers to the Healthytoes product. In fact, Defendants admittedly were diverting customers from YogaToes® to Healthytoes through the use of a bait-and-switch scheme and even characterized Healthytoes as the "New!!! 2nd Generation YogaToes" to cause customers to think that Healthytoes were the authentic YogaToes® product. (Witt Decl. ¶6; Lefkovitz Dep. I. 288-297, Ex. 36; Lefkovitz Dep. II. 596-605, Ex. 110.)

Defendants also argue that the use of FenF's trademarks in the metatags of their website is not intentional concealment of their infringement, because Defendants also use the trademarks visibly on the website. (Opposition, p. 24-25.) Defendants misconstrue the purpose of metatags, which affect the search results of an internet search engine. *Brookfield Comm'ns, Inc.*, 174 F.3d at 1045. When the search engine comes across a trademark in the metatags of a website, it lists that website in the search results when a user searches the web for the corresponding trademarked product. Thus, the nefarious use is the use of the trademark to trick the search engine and ultimately the user into believing that the website is relevant to their search, when it is not. Defendants' use of the FenF's trademarks in the metatags of their website would have caused Defendants' website to be listed in the search results for FenF's trademarks, even though Defendants did not offer FenF's product for sale.

Finally, as further evidence of Defendants' willful infringement of FenF's trademarks, Defendants continued to use FenF's trademarks after FenF filed this case against the Defendants and even after the Court enjoined Defendants' from using the trademarks.  (See ECF Docket Nos. 115 and 173.)  Therefore, FenF is entitled to summary judgment on Defendant's willful infringement of its trademarks as a matter of law.

## III.  CONCLUSION

Based on the foregoing and Plaintiff's Memorandum in Support of its Second Motion for Summary Judgment, Plaintiff FenF, LLC is entitled to summary judgment on its claims of patent infringement, federal trademark infringement, unfair competition, false advertising, false marking and Ohio unfair competition.  Additionally, FenF is entitled to summary judgment that Defendants willfully infringed its trademarks, copyrights, and patents and that Defendant Joshua Lefkovitz is personally liable for copyright infringement.

Respectfully submitted,

/s/John M. Skeriotis
Joseph T. Dattilo (Ohio Bar #0010398)
John M. Skeriotis (Ohio Bar #0069263)
jdattilo@brouse.com
jskeriotis@brouse.com
1001 Lakeside Dr. Suite 1600
Cleveland, OH 44114-1151
216.830.6830 – Telephone
216.830.6807 – Facsimile

388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
330.535.5711 – Telephone
330.253.8601 – Facsimile
*Attorneys for Plaintiff, FenF, LLC*

## PAGE LIMIT CERTIFICATION

Pursuant to LR 7.1(f), the undersigned counsel hereby certifies that this case was assigned by the Court to the "complex track" and that this Memorandum in Support complies with the page limit requirements as modified by the Court in any Case Management Plan.

/s/ *John M. Skeriotis*
John M. Skeriotis
*One of the Attorneys for Plaintiff, FenF, LLC*

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of February, 2010, a copy of the foregoing Reply Brief in Support of Plaintiff's Second Motion for Partial Summary Judgment was filed via the Court's electronic filing system.  Notice of filing will be performed by the Court's electronic filing system.  Parties may access the document through the electronic filing system.

/s/ *John M. Skeriotis*
John M. Skeriotis
*One of the Attorneys for Plaintiff, FenF, LLC*

771470.5